IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID PATRICK M.,[1]         )
                             )
            Plaintiff,       )
                             )       CIVIL ACTION
v.                           )
                             )       No. 22-1211-JWL
KILOLO KIJAKAZI,             )
Acting Commissioner of Social Security, )
                             )
            Defendant.       )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.      Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed application for SSDI and SSI benefits on January 9, 2020. (R. 15, 265, 275). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed to resolve a conflict between the vocational expert's (VE) testimony that an individual with only rudimentary literacy (defined as the ability to read warning and danger signs or cash register buttons) is able to perform three representative occupations, and the Dictionary of Occupational Titles (DOT) which provides that all three of the occupations require Level 1 Reading.[2]

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

---

[2] The Commissioner points out one of the occupations, Electrical Accessories Assembler, is Language Level 2. (Comm'r Br. 9) (citing DICOT 729.687-010, 1991 WL 679733).

Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.    Discussion**

Plaintiff points out the ALJ found Plaintiff "may not work in environments requiring more than rudimentary literacy (e.g. the ability to read warning and danger signs or cash register buttons)." (Pl. Br. 7) (quoting the ALJ's RFC assessment, R. 21). He then argues all three representative jobs testified by the VE and relied upon by the

4

ALJ require level 1 reading, identified in the DOT as "Recognize meaning of 2,500 (two- or three-syllable) words.  Read at a rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers."  Id. at 9 (quoting the DOT listing for Small Products Assembler, 1991 WL 679050).

Plaintiff argues, "The plain language of this reading level and the reading limitations in the RFC conflict."  (Pl. Br. 9).  Plaintiff argues, "there is an apparent conflict between the vocational expert's testimony and the DOT, but the ALJ failed to address it.  Id. at 10.  He acknowledges the ALJ asked the VE if his testimony was consistent with the DOT and the SCO (Selected Characteristics of Occupations) and quotes the VE's response:

> It is.  However, the DOT and SCO do not set forth information in reference to a total sitting, standing or walking, position alternation, absenteeism, being on or off-task.  I believe that's it.  That's additional information that's not set forth in those two treatises that I know from over 33 years of work experience providing job placement, ergonomic and other on-the-job services to individuals with occupational and non-occupational injuries and illnesses.

Id. at 10-11 (quoting R. 57).  Plaintiff then argues, "The ALJ never recognized, addressed, or resolved the inconsistency between the RFC and the vocational expert's testimony at the hearing."  Id. 11.  He acknowledges the ALJ asked the VE regarding conflicts between the DOT and SCO and the VE testimony, recognized the VE testimony quoted above, and concluded the VE testimony was consistent with the DOT.  Id. 11-12.

Plaintiff argues, "while the ALJ attempted to resolve any conflicts by specifying the issues he recognized as an apparent conflict, he did not appear to be aware of the conflict between the vocational expert's testimony and the DOT regarding literacy

expectations." (Pl. Br. 12).  He concludes, "There exists an apparent conflict between the RFC and the DOT regarding literacy levels, but the ALJ failed to address this conflict both at the hearing and in the decision. Therefore, remand is required for the ALJ to adhere to the requirements of SSR 00-4p." Id.

The Commissioner responds that Plaintiff does not show a conflict between the VE testimony and the DOT.  (Comm'r Br. 8).  She notes the VE explained his testimony was consistent with the DOT and the SCO "except that those publications did not address total sitting, standing, or walking; position alteration; absenteeism; and being on- or off-task." Id. at 9 (citing R. 56-57).  She points out that despite the expert vocational testimony Plaintiff argues there is an additional conflict not recognized by the VE or the ALJ. Id.

She points out that Plaintiff's past work as a butcher helper, DOT # 525.381-010, involves Language Level 2 and Plaintiff does not argue he "has lost the educational development he previously had when performing his butcher apprentice job (through, for example, something like a traumatic brain injury)." Id. at 12.

In his Reply Brief Plaintiff reiterates his argument the plain language of the RFC defining "rudimentary literacy (e.g., the ability to read warning and danger signs or cash register buttons)" conflicts with the DOT definition of reading level requirements to "Recognize meaning of 2,500 (two- or three-syllable) words.  Read at a rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers."  (Reply 2) (quoting without citation, R. 21 and quoting DICOT 706.684-022, 1991 WL 679050).

This court recently decided the issue presented here.  <u>Dustin S. v. Kijakazi</u>, Civ. A. No. 22-1151-JWL, 2023 WL 4560904 (D. Kan. July 17, 2023).  The court finds no significant difference in the facts of this case and reaches the same conclusion here.  This issue revolves around the <u>Dictionary of Occupational Titles'</u> usage of the General Educational Development (GED) scales as a component of the definition trailer of each Occupational Definition.  The DOT describes GED:

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.  The description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States.  An analysis of mathematics courses in school curricula reveals distinct levels of progression in the primary and secondary grades and in college.  These levels of progression facilitated the selection and assignment of six levels of GED for the mathematical development scale.
>
> However, though language courses follow a similar pattern of progression in primary and secondary school, particularly in learning and applying the principles of grammar, this pattern changes at the college level.  The diversity of language courses offered at the college level precludes the establishment of distinct levels of language progression for these four years.  Consequently, language development is limited to five defined levels of GED inasmuch as levels 5 and 6 share a common definition, even though they are distinct levels.

(DOT, App'x C, III), available online at [Appendix C: Components of the Definition Trailer - DOT Dictionary of Occupational Titles (occupationalinfo.org)](#) (last visited August 10, 2023.

Each Language Development Level (1-6) consists of three components, Reading, Writing, and Speaking.  Id.  Thus, when Plaintiff speaks of Reading Level 1, he is speaking of the reading component of "Language: Level 1."  See, e.g. Assembler, Small Products I, DICOT 706.684-022, 1991 WL 679050 (Language: Level 1 – READING: … WRITING: … SPEAKING:").  As the Commissioner explains:

> Language is one of three sub-categories (along with Reasoning and Math) of General Education Development.  DOT, App'x C, 1991 WL 688702.  GED is defined as
>
>> those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study.
>
> Id. (emphases added).  As the Tenth Circuit has explained, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job … ." Andersen v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) (emphasis added).

(Comm'r Br. 10-11).

Plaintiff's claim that there is an apparent conflict requiring remand for an explanation fails for an even more basic reason.  Plaintiff simply has not demonstrated that a conflict exists.  Plaintiff argues that the plain language of the Occupational Definition of Language Level 1 – Reading, in two of the three representative occupations relied upon by the ALJ—"Recognize meaning of 2,500 (two- or three-syllable) words. Read at a rate of 95-120 words per minute.  Compare similarities and differences between words and between series of numbers."—apparently conflicts with the plain language of

8

the ALJ's definition of rudimentary literacy—"the ability to read warning and danger signs or cash register buttons."  However, Plaintiff also acknowledges the VE testified his testimony was consistent with the DOT and the SCO except for his testimony regarding total sitting, standing or walking, position alternation, absenteeism, and being on or off-task.  Thus, it is clear the VE testified Plaintiff is able to perform the three representative occupations, and in doing so he implicitly testified that the Language Level 1: - Reading, Writing, and Speaking requirements of those occupations (and the Language Level 2: - Reading, Writing, and Speaking requirements of the electrical accessories assembler occupation) only require rudimentary literacy as defined to him by the ALJ in the hypothetical question at the hearing.  (R. 53).

      Plaintiff's argument that the ALJ needed to make further findings about consistency misses the ALJ's finding "the vocational expert's testimony is consistent with the information contained in the DOT."  (R. 30).  The ALJ made the finding and providing such information is the very purpose of a VE.  20 C.F.R. § 404.1566 provides that the SSA will take administrative notice of job data in a number of publications including the DOT.  It also provides, "If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."  20 C.F.R. § 404.1566(e).  In 1983, the SSA issued a <u>Social Security Ruling</u> (SSR) titled <u>Titles II and XVI: Capability To Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating a</u>

Combination of Exertional and Nonexertional Impairments. SSR 83-14, 1983 WL 31254.

That Ruling explains that in evaluating such cases

> Use of a vocational resource may be helpful in the evaluation of what appear to be "obvious" types of cases.  In more complex situations, the assistance of a vocational resource may be necessary.  The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient for relatively simple issues.  In more complex cases, a person or persons with specialized knowledge would be helpful.  State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops.  Vocational experts may testify for this purpose at the hearing and Appeals Council levels.

Id. 1983 WL 31254, *4.  Contrary to the VE's testimony and the ALJ's finding, Plaintiff's only argument is that the plain language of the DOT and the ALJ's RFC assessment appear to conflict.  Plaintiff provides no citation to vocational authority for his assertion.

As the name implies, a vocational expert, through training and experience, is expert in vocational matters.  The record contains the vocational qualifications of the VE here (R. 379-82) and Plaintiff's counsel responded that he did not "have any questions about or objections to" the VE serving in this case.  Id. at 42.  Plaintiff did not raise any objection to VE testimony at the hearing, and to object now requires more than his lay assertion of an apparent conflict.  Moreover, if Plaintiff's contrary argument is credited, the natural conclusion must be that there can be no work in the economy available to Plaintiff because Language Level 1 is the lowest Language Development level.  However, as the Commissioner points out Plaintiff's past work as a butcher helper, DOT

# 525.381-010, involves Language Level 2 and the court sees no allegations that Plaintiff's literacy has significantly decreased since.

Because Plaintiff has shown no conflict between the RFC assessed and the DOT other than those explained by the VE, there was no further conflict for the ALJ to address, Plaintiff has shown no error, and remand is not required.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 11, 2023, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**